**CERTAINTEED CORPORATION,**
Plaintiff,

v.

**Jerome O. WILLIAMS, Jr., Defendant.**

**No. 06 C 2992.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 3, 2007.

Peter R. Bulmer, Cathryn Elizabeth Albrecht, and Conrad S. Kee, Jackson Lewis LLP, Chicago, IL, for Plaintiff.

James T. Mueller and Shayle P. Fox, Holland & Knight LLC, Chicago, IL, for Defendant.

*ORDER ISSUING PRELIMINARY IN-JUNCTION PURSUANT TO OPIN-ION AND MANDATE OF SEV-ENTH CIRCUIT*

JAMES F. HOLDERMAN, Chief Judge.

Pursuant to the remand and forthwith mandate from the Seventh Circuit, *CertainTeed Corp. v. Jerome O. Williams, Jr.*, 481 F.3d 528 (7th Cir.2007), defendant Jerome O. Williams, Jr. ("Williams") is preliminarily enjoined, pursuant to the Non–Compete Agreement ("Agreement") Williams executed with plaintiff Certain-Teed Corporation ("CertainTeed") on June 12, 2002 (Exhibit B to Stipulated Facts) (Dkt. No. 24) from continued employment at IKO Industries, Ltd. ("IKO") in any capacity that is equivalent to the positions Williams held as Acting Plant Manager and Plant Manager while employed at CertainTeed, pending a determination after a trial on the merits or other resolution in this case. This court issues this order solely because of the remand and forthwith mandate of the Seventh Circuit.

This court recognizes that the Seventh Circuit's remand order denied defendant Williams the opportunity to present a defense to plaintiff CertainTeed's motion for preliminary injunction. Because the Seventh Circuit order required, without any further evidentiary hearing, "the prompt entry of an appropriate preliminary injunction," defendant Williams is now enjoined from earning a living in his chosen occupation without due process of law. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("the right to present evidence is basic to a fair hearing"); *Jenkins v. McKeithen*, 395 U.S. 411, 429, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) ("The right to present evidence is, of course, essential to the fair hearing required by the Due Process Clause."). The Seventh Circuit's preordained, man-

dated result authored for the panel by Chief Judge Frank Easterbrook is similar to the circumstances he found when he wrote: "The result was a kangaroo court, different only in the trappings from a default judgment." *Smith v. Chicago Sch. Reform Bd. of Trustees,* 165 F.3d 1142, 1144 (7th Cir.1999).

## BACKGROUND

This court applied Pennsylvania law as the parties agreed and in the manner required by the United States Supreme Court in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to the facts in the record. In doing so, this court on June 27, 2006, after hearing plaintiff CertainTeed's evidence, denied plaintiff CertainTeed's motion for preliminary injunction by granting judgment under Federal Rule of Civil Procedure 52(c) in favor of defendant Williams. This court's sixteen-page memorandum opinion explained this court's reasoning, (Dkt. No. 30). CertainTeed then eschewed the opportunity to proceed with pretrial discovery through which plaintiff CertainTeed would have obtained evidence regarding defendant Williams' conduct in his employment at IKO, (Dkt. No. 32). Certainteed instead appealed this court's June 27, 2006 order. On March 22, 2007, the Seventh Circuit vacated this court's June 27, 2006 order and remanded the case "for the prompt entry of an appropriate preliminary injunction" in favor of CertainTeed, *CertainTeed,* 481 F.3d 528, 530, without a further evidentiary hearing.

## LEGAL STANDARD

 This court will not repeat the factual background set forth in its June 27, 2006 opinion. *See Certainteed Corp. v. Williams,* No. 06 C 2992, 2006 WL 1762660 (N.D.Ill. Jun.27, 2006), (Dkt. No. 30). Some discussion of the requirements

of the law, however, is appropriate. For substantive state law claims, such as this case's breach of contract claim, a federal court must first look to the state legislature and the state supreme court's interpretation of its own statutes. *Erie,* 304 U.S. at 78, 58 S.Ct. 817; *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 669 (7th Cir.2001). In this case, as explained in the court's June 27, 2006 opinion, Illinois choice of law principles result in the application of Pennsylvania law to this case. Chief Judge Easterbrook wrote in *Intec USA, LLC v. Engle,* 467 F.3d 1038, 1040 (7th Cir.2006), that: "Under *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal court's task is not to make an independent decision but to predict how the Supreme Court of [the applicable state] would understand and apply its own law."

 The Supreme Court of Pennsylvania has made its position clear that "restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Hess v. Gebhard & Co.,* 570 Pa. 148, 808 A.2d 912, 917 (2002); *see Jacobson & Co. v. Int'l Envt. Corp.,* 427 Pa. 439, 235 A.2d 612 (1967). "In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Hess,* 808 A.2d at 917. The Supreme Court of Pennsylvania has observed that "an overwhelming majority of jurisdictions, including Pennsylvania, require, at a minimum, that such contracts be reasonably related to the protection of a legitimate business interest." *Id.* at 918. The Supreme Court of Pennsylvania has identified the legiti-

mate business interests that are protectible, stating: "Generally, interests that can be protected through covenants include trade secrets, confidential information, good will, and unique or extraordinary skills." *Id.* at 920.

■■ The Supreme Court of Pennsylvania for fifty years has continued to reaffirm that "general covenants not to compete which are ancillary to employment will be subjected to a more stringent test of reasonableness than that which is applied to such restrictive covenants ancillary to the sale of a business." *Morgan's Home Equip. Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838, 846 (1957); quoted in *Hayes v. Altman*, 438 Pa. 451, 266 A.2d 269, 271 (1970); quoted in *Hess*, 808 A.2d at 920. Additionally, the Supreme Court of Pennsylvania was explicit in stating: "this Court requires the application of a balancing test whereby the court balances the employer's protectible interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation, and then balances the result against the interest of the public." *Hess*, 808 A.2d at 920 (*citing Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976)).

Chief Judge Easterbrook, in authoring for the panel the Seventh Circuit's March 22, 2007 opinion in this case, did not apply or even refer to the balancing test that the Supreme Court of Pennsylvania "requires," *Hess*, 808 A.2d at 920, be applied before an injunction enforcing a covenant not to compete against an employee is issued.

### THE AGREEMENT

This court's June 27, 2006 opinion and the Seventh Circuit's March 22, 2007 opinion both appropriately focused on paragraph 7 of the Agreement, in which defendant Williams agreed:

I shall not, without written consent signed by an officer of [CertainTeed], directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one year period following termination of my employment with [CertainTeed], engage in or contribute my knowledge to any work or activity that involves a product, process, apparatus, service or development (i) which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or (ii) with respect to which I had access to Confidential Information while at [CertainTeed] at any time during the period prior to such termination.

This court held that paragraph 7 clause (i) of the Agreement would be considered by the Supreme Court of Pennsylvania to be an unreasonable restraint on Williams in earning a living because it prohibited Williams from engaging in any business competing with CertainTeed when that competition does not involve the use of what the Supreme Court of Pennsylvania has identified as the business interests that can be protected by covenants not to compete: "trade secrets, confidential information, good will, and unique or extraordinary skills." *Hess*, 808 A.2d at 920. Following Pennsylvania law, which allows enforcement only of the restrictions that are reasonably necessary to protect the identified business interests of the employer, *id.*, this court excised clause (i) from paragraph 7.

The reformed language of paragraph 7 of the Agreement then read:

I shall not, without written consent signed by an officer of [CertainTeed], directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one year period following termination of my employment with [CertainTeed], engage in

or contribute my knowledge to any work or activity that involves a product, process, apparatus, service or development [ (ii)] with respect to which I had access to Confidential Information while at [CertainTeed] at any time during the period prior to such termination.

The reformed language prohibited Williams from engaging in or contributing his knowledge to work at IKO involving CertainTeed's products, processes, apparatuses, services or developments, if Williams had had access to CertainTeed's confidential information regarding such products, processes, apparatuses, services or developments while Williams was employed at CertainTeed, pursuant to the Agreement. Because CertainTeed conceded, after prehearing discovery, that there was no evidence that Williams had ever used or disclosed any of Certain-Teed's confidential information during the time he had worked at IKO prior to the June 27, 2006 hearing, this court found that CertainTeed had not shown a reasonable likelihood of success on its claim that Williams had violated the Agreement during the time he had been at IKO. In so ruling, this court determined CertainTeed had not shown it was likely that defendant Williams would violate the reformed CertainTeed Agreement during the remaining months of the Agreement's effect. The court, however, emphasized to Williams his obligation under the Agreement by stating as the last sentence of this court's June 27, 2006 opinion:

Williams is free to work for IKO as long as he complies with the Noncompete Agreement and continues to refrain from using or disclosing CertainTeed's protected information.

(June 27, 2006 op. at 15.) As a result of this court's findings, it was not necessary for this court to go further in its analysis. Furthermore, it was unnecessary for this court to apply the requisite balancing test of the Supreme Court of Pennsylvania, that "requires" a court when considering the issuance of an injunction against an employee pursuant to a restrictive covenant to balance "the employer's protectible business interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation, and then balances the result against the interest of the public." *See Hess*, 808 A.2d at 920.

### SEVENTH CIRCUIT MARCH 22, 2007 OPINION

The Seventh Circuit, in its March 22, 2007 opinion, did not find fault with this court's decision to excise clause (i), nor did the Seventh Circuit find fault procedurally with this court's granting of Williams's Rule 52(c) motion at the end of Certain-Teed's case-in-chief. Consequently, this court interprets the Seventh Circuit's mandate requiring this court to promptly enter an appropriate preliminary injunction to apply the Agreement's remaining language—clause (ii)—of paragraph 7. The Seventh Circuit apparently considered the court's excising of clause (i) and reforming of the remaining language in paragraph 7 as an implicit approval of the validity of clause (ii). This was not the case. This court found that Williams's conduct as a plant manager for IKO violated clause (i), but that clause was broader than the law of Pennsylvania allowed. Clause (i) covered competition that was beyond the business interests capable of being protected by the Supreme Court of Pennsylvania which are: "trade secrets, confidential information, good will, and unique or extraordinary skills." *Hess*, 808 A.2d at 920. Once clause (i) was excised from the Agreement, the court addressed the question of whether CertainTeed could establish a likelihood of success on the merits that Williams's job at IKO violated clause

(ii). The court found that even if clause (ii) were valid, CertainTeed failed to prove that Williams's job at IKO violated clause (ii). This court did not address whether clause (ii) was valid under Pennsylvania law because this court's factual determination did not require it.

No analysis was articulated by the Seventh Circuit regarding whether the reformed language of paragraph 7 of the Agreement was reasonably necessary to protect the legitimate business interests of CertainTeed. Moreover, as stated earlier in this opinion, the Seventh Circuit did not apply the balancing test that the Supreme Court of Pennsylvania "requires," *Hess*, 808 A.2d at 920, prior to ordering the entry of a preliminary injunction.

Under the Seventh Circuit's prediction of the Supreme Court of Pennsylvania's interpretation of clause (ii) of paragraph 7 of the Agreement, CertainTeed's protected business interests exist when a former employee "would be tempted," but has undisputedly not used or disclosed trade secrets, when such use or disclosure, if it were to occur, would be "hard to detect." *CertainTeed*, 481 F.3d 528, 530. The Supreme Court of Pennsylvania has never expanded Pennsylvania law that far. The Seventh Circuit's ruling that the Supreme Court of Pennsylvania, if confronted with the issue, would hold that "Keeping a business executive with a wealth of information from taking an equivalent position at a rival is 'reasonably necessary for the protection of the employer's protectible business interests' when the executive's use of trade secrets would be hard to detect," *CertainTeed*, 481 F.3d at 530, was stated without citation to any authority. Moreover, the Seventh Circuit's holding appears contrary to the Supreme Court of Pennsylvania's stated position that: "If the covenant is inserted into the agreement for some other purpose, as for example, elimi-

nating or repressing competition or to keep the employee from competing so that the employer can gain an economic advantage, the covenant will not be enforced." *Hess*, 808 A.2d at 920–21.

## ANALYSIS

## I. DUE PROCESS

■ The Seventh Circuit's "remand for the prompt entry of an appropriate preliminary injunction," *CertainTeed*, 481 F.3d at 530, without a further hearing at which defendant Williams could defend himself, is a violation of Williams' due process rights. Because this court granted Williams' Rule 52(c) motion and found that CertainTeed had not met its burden to show that Williams violated the Agreement, Williams did not present any evidence in his defense. This point is particularly key in light of representations that CertainTeed made to the Seventh Circuit in the brief it filed with the Seventh Circuit on October 11, 2006, that:

> There is no meaningful dispute as to the fact that Mr. Williams had access to Confidential Information regarding CertainTeed's residential roofing products while employed by CertainTeed. Defendant did not offer any evidence to contradict the extensive testimony of Messrs. Stahl and Kalkanoglu and the confidential nature of the information used by Mr. Williams while employed by CertainTeed is self-evident.

(Appellant Br. at 20–21.) Of course, Williams offered no evidence to contradict the testimony of CertainTeed's witnesses. CertainTeed's preliminary injunction was denied at the end of plaintiff CertainTeed's case-in-chief, a point ignored by the Seventh Circuit.

When counsel for Williams had the opportunity to cross-examine CertainTeed's witnesses during CertainTeed's case-in-

chief, he began to develop the defense theories: (1) that Williams did not have access to confidential information and (2) that Williams did not work at IKO on any products or processes that were similar to those to for which he had access to confidential information while employed at CertainTeed. These theories were not further developed by affirmative evidence during the defense case because defendant Williams did not have the chance to do so and now will not have the chance to do so because a preliminary injunction against him must be entered.

The Seventh Circuit also found the fact that "competition in shingles is national if not international." *CertainTeed,* 481 F.3d at 529. No finding of fact was ever made by this court about the reasonableness of the geographic scope of the Agreement. On this point, adverse to defendant Williams, the defendant did not have the opportunity to present evidence that the unlimited geographic scope of the Agreement was unreasonable given that Williams worked for CertainTeed supplying the geographic area of its plant in Ennis, Texas and for IKO supplying the geographic area of its plant in Kankakee, Illinois.

## II. THE *ERIE* DOCTRINE

As previously explained by the Seventh Circuit, the Supreme Court doctrine enunciated in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates that federal courts applying state law must not independently branch out on their own, but must "predict how the Supreme Court of [the applicable state] would understand and apply its own law." *Intec,* 467 F.3d at 1040. The Seventh Circuit cited to no law to support the Seventh Circuit's prediction that the Supreme Court of Pennsylvania would hold that "Keeping a business executive with a

wealth of information from taking an equivalent position at a rival is 'reasonably necessary for the protection of the employer's protectible interests' when the executive's use of trade secrets would be hard to detect." *CertainTeed,* 481 F.3d at 530.

Regardless of the Seventh Circuit's mandated due process deficiency and the Seventh Circuit's prediction regarding the way the Supreme Court of Pennsylvania would have decided the outcome, this court is powerless to do anything but abide by the Seventh Circuit's remand order and mandate. This court has heard a proffer for the record from Williams' counsel demonstrating the prejudice to Williams resulting from the Seventh Circuit's remand order and mandate. Even though an appeal by Williams from the entry of this preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1) would be to the same panel of judges according to Rule 6(b) of the Seventh Circuit Court of Appeal's Operating Procedures, Williams has no other recourse if he believes the entry of the preliminary injunction is legally not correct.

## CONCLUSION

Pursuant to the remand and forthwith mandate of the Seventh Circuit, *CertainTeed Corp. v. Jerome O. Williams, Jr.,* 481 F.3d 528 (7th Cir.2007), defendant Jerome O. Williams, Jr. ("Williams") is preliminarily enjoined, pursuant to the Non–Compete Agreement Williams executed with plaintiff CertainTeed Corporation ("CertainTeed") on June 12, 2002 (Exhibit B to Stipulated Facts) (Dkt. No. 24) from continued employment at IKO Industries, Ltd. ("IKO") in any capacity that is equivalent to the positions Williams held as Acting Plant Manager and Plant Manager while employed at CertainTeed, pending a determination after a trial on the merits or other resolution in this case. This prelimi-

nary injunction shall be effective upon the plaintiff Certainteed's posting of a bond as security in the amount of $138,000, which is represented to be the annual income, including bonus, earned by defendant Williams at IKO.